[No. E004900. Fourth Dist., Div. Two. May 6, 1988.]

SUZUKI MOTOR CO., LTD., Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
PEGGY ARMENTA, Real Party in Interest.

**COUNSEL**

Clinnin, Siracuse & Belcher, Roy A. Goto and John R. Dangl, Jr., for Petitioner.

No appearance for Respondent.

DeWitt & Algorri, Mark S. Algorri and Ernest P. Algorri for Real Party in Interest.

**OPINION**

**McDANIEL, J.—**

### INTRODUCTION

Suzuki Motor Co., Ltd. (Suzuki), defendant below, by the petition here seeks a writ of mandate to compel the superior court to vacate its order

denying Suzuki's motion to quash service of process and to enter an order granting that motion.

## FACTS

Suzuki is a Japanese corporation which is named as a defendant in an action now pending in the superior court entitled *Peggy Armenta v. Bellflower Suzuki, et al.,* case No. BCV 003277.

Peggy Armenta, the plaintiff in that action and the real party in interest in this proceeding, allegedly sustained personal injuries while operating a 1984 Suzuki four-wheel, all-terrain vehicle. Ms. Armenta filed a complaint for products liability and negligence against a number of defendants, including Suzuki.

Plaintiff purported to effect service of process upon Suzuki by sending the summons, together with copies of the complaint, certificate of assignment and amendment to the complaint, via registered mail to Suzuki's office in Hamamatsu, Japan. These documents, which actually were received by Suzuki, were not translated into Japanese.

Suzuki moved to quash service of process, asserting that service was improper under the provisions of the California Code of Civil Procedure as well as the provisions of the Hague Convention. In support of its motion to quash, Suzuki filed the declaration of Hidetoshi Asakura, a partner with the law firm of Graham & James, licensed to practice law in Japan and California.

In his declaration, Mr. Asakura expounded on the acceptable methods of service of process in Japan and concluded that plaintiff here had failed to conform to these methods, and thereby had also failed to conform to the requirements of the Hague Convention for service of process in the Convention's signatory states. Plaintiff did not contest the information contained in Mr. Asakura's declaration, but relied instead on the First District's decision in *Shoei Kako, Co. v. Superior Court* (1973) 33 Cal.App.3d 808 [109 Cal.Rptr. 402].

The superior court refused to grant the motion to quash service, and rightly so, in light of the holding in *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937] (which holds that a lower court which refuses to follow a binding precedent of a higher court is acting in excess of jurisdiction), and because there has been no holding contrary to that of *Shoei Kako* in this or any other appellate district.

We, however, are not bound by the holding in *Shoei Kako,* particularly because it was based in part on a unique factual record before that court, a record which differs substantially from that now before us. Therefore, as explained below, we hold that the service of process described above was not effective, and we shall grant the petition for writ of mandate.

### DISCUSSION

In 1969, the United States signed the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (20 U.S.T. 361-367, T.I.A.S. 6638) (the Hague Convention or the Convention). (See appen. A.) Japan became a signatory to the Convention in 1970.

The Convention provides several acceptable methods for service of process abroad. These methods are: (1) service through the receiving country's designated "Central Authority" for service of foreign process (art. 5); (2) delivery by the Central Authority to an addressee who accepts service "voluntarily" so long as the method used is not incompatible with the law of the receiving state (art. 5); (3) service through diplomatic or consular agents of the sending state (art. 8); (4) service through the judicial officers, officials or other competent persons of the receiving state (art. 10, subdivisions (b) and (c)); and (5) service as permitted by the internal law of the receiving state for documents coming from abroad (art. 19).

Real party in interest urges that there is yet another method of service of process which meets the requirements of the Convention, to wit, service by registered mail as allowed by California Code of Civil Procedure sections 413.10[1] and 415.30[2] and article 10, subdivision (a) of the Convention, which provides that "Provided the State of destination does not object, the present Convention shall not interfere with—(a) the freedom to send judicial docu-

---

[1] Code of Civil Procedure section 413.10 reads as follows: "Except as otherwise provided by statute, a summons shall be served on a person: . . . [¶] (c) Outside the United States, as provided in this chapter or as directed by the court in which the action is pending, or, if the court before or after service finds that the service is reasonably calculated to give actual notice, as prescribed by the law of the place where the person is served or as directed by the foreign authority in response to a letter rogatory. These rules are subject to the provisions of the Convention on the 'Service Abroad of Judicial and Extrajudicial Documents' in Civil or Commercial Matters (Hague Service Convention)."

[2] Code of Civil Procedure section 415.30 reads, in pertinent part: "(a) A summons may be served by mail as provided in this section. A copy of the summons and of the complaint shall be mailed (by first-class mail or airmail, postage prepaid) to the person to be served, together with two copies of the notice and acknowledgement provided for in subdivision (b) and a return envelope, postage prepaid, addressed to the sender. . . . (c) Service of a summons pursuant to this section is deemed complete on the date a written acknowledgement of receipt of summons is executed, if such acknowledgement thereafter is returned to the sender."

ments, by postal channels, directly to persons abroad, . . ." According to real party in interest and the court in *Shoei Kako,* this section of the Convention allows service of process by mail.

The *Shoei Kako* court analyzed the issue of the interpretation of the section, concluding that the Convention permitted signatories to exclude the methods of service outlined in articles 8 and 10 by filing objections to them. Japan objected to article 10, subdivisions (b) and (c), which provide for service via the judicial officers, officials, or other competent persons of the receiving state. Japan, however, did not object to article 10, subdivision (a). Downplaying the fact that article 10, subdivision (a) specifically refers to the *sending* of judicial documents rather than the *service* of such documents, the *Shoei Kako* court interpreted article 10, subdivision (a), like article 10, subdivisions (b) and (c), as *also* referring to the *service* of process *by mail.* According to that court, "The reference to 'the freedom to send judicial documents by postal channels, directly to persons abroad' would be superfluous unless it was related to the sending of such documents for the purpose of service. The mails are open to all." (*Id.,* 33 Cal.App.3d at p. 821.) Therefore, it concluded that Japan's failure to object specifically to subdivision (a) meant such service was acceptable.

The *Shoei Kako* court also relied on article 15 of the Convention to hold that service by registered mail was proper. Article 15 provides, in relevant part, "Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, judgment shall not be given until it is established that—(a) the document was served *by a method prescribed by the internal law of the State* addressed for the service of documents in domestic actions upon persons who are within its territory, or [¶] (b) the document was *actually delivered* to the defendant or to his residence *by another method provided for by this Convention,* and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend. . . ." (Italics added.) According to the *Shoei Kako* court, the record before it indicated that Japan's internal law allowed service by mail with evidence of delivery as an effective mode of service of process, and the record also indicated that the defendant in the case before it had actually received the summons and complaint by "a method provided for by [the] Convention," i.e., service by registered mail, the *Shoei Kako* court having determined that service by registered mail was a method allowed under article 10, subdivision (a).

Here, the record before us indicates that Japan does *not* have an internal legal system which allows service of process by registered mail. As indicated by the declaration of Mr. Asakura, and confirmed by a law review article

entitled *Jurisdiction and the Japanese Defendant* (Peterson, *Jurisdiction and the Japanese Defendant* (1985) 25 Santa Clara L.Rev. 555, 576-579), Japan, unlike California, does not allow either attorneys or lay people to serve process by mail. To effectuate service of process through the mail, *the court clerk* stamps the outside of the envelope containing the required documents with a notice of special service (*tokubetsu sootatsu*) and the mail carrier acts as a *special officer of the court* by recording proof of delivery on a special proof of service form and returning this proof of service *to the court*. Significantly, real party in interest did not contravert these facts when she opposed Suzuki's motion to quash.

Given the fact that Japan itself does not recognize a form of service sufficiently equivalent to America's registered mail system, it is extremely unlikely that Japan's failure to object to article 10, subdivision (a) was intended to authorize the use of registered mail as an effective mode of service of process, particularly in light of the fact that Japan specifically objected to the much more formal modes of service by *Japanese officials* which were available in article 10, subdivisions (b) and (c). Instead, it seems much more likely that Japan interpreted article 10, subdivision (a) as allowing only the *transmission* of judicial documents, rather than the *service of process*. This interpretation is all the more reasonable given the fact that the Convention persistently refers to "service" as opposed to "send," e.g., "forward documents, *for the purpose of service*" (art. 9, italics added); "transmission of judicial documents *for service*" (art. 14, italics added); and "transmitted abroad for *the purpose of service*" (arts. 15 and 16, italics added), in contrast to "the freedom to *send* judicial documents, by postal channels, directly to persons abroad, . . ." (art. 10, subd. (a), italics added). ■ It is a well-recognized canon of statutory interpretation that words in a statute or similar enactment are to be given their common and ordinary meaning (see *In re Quinn* (1973) 35 Cal.App.3d 473, 482 [110 Cal.Rptr. 881]), and that *every* word and phrase used is presumed to have a meaning and to perform a useful function. (*Mahdavi* v. *Fair Employment Practice Com.* (1977) 67 Cal.App.3d 326, 334 [136 Cal.Rptr. 421].) ■ To interpret the phrase "to send" as used in article 10, subdivision (a) of the Convention to mean "to serve" would fly in the face of both these rules; the common and ordinary meaning of "to send" is "to cause to be conveyed by an intermediary to a destination" or "to dispatch, as by mail or telegraph" (see "send," The American Heritage Dict. of the English Language (1969) p. 1179) *not* "to serve," and the fact the Convention's drafters used both the phrase "to send" and the phrase "service of process" indicates they intended each phrase to have a different meaning and function.

Real party in interest relies on various cases which do not interpret "to send" as we do, including the recent case of *Ackermann* v. *Levine* (2d Cir.

1986) 788 F.2d 830, which cites *Shoei Kako* with approval, and which, as did the court in *Shoei Kako,* interprets "to send" as meaning "to serve."

In *Ackermann,* German plaintiffs served a summons and complaint on a New York defendant by registered mail. The Second Circuit held that service of process by registered mail was effective under article 10, subdivision (a) of the Hague Convention, because (1) the use of the word "send" in that subdivision was intended to mean "service" (*id.,* at p. 839), and (2) the United States had not objected to the use of "postal channels" under article 10, subdivision (a) as it could have chosen to do. (*Id.*)[3] The *Ackermann* court also noted with approval several other cases which had held that Japan, too, had not objected to mail "service" under article 10, subdivision (a). (*Id.,* at p. 840, citing *Zisman* v. *Sieger* (N.D.Ill. 1985) 106 F.R.D. 194; *Weight* v. *Kawasaki Heavy Industries, Ltd.* (E.D.Va. 1984) 597 F.Supp. 1082, 1085-1086, citing *Shoei Kako;* and *Chrysler Corp.* v. *General Motors Corp*. (D.D.C. 1984) 589 F.Supp. 1182, 1206 [78 A.L.R.Fed. 119], citing *Shoei Kako*.)

The result in *Ackermann,* as in the cases to which the *Ackermann* court referred with approval, turns on the interpretation of the word "send" as meaning "serve." As noted above, this interpretation simply does not make sense. The *Ackermann* court relied on a treatise which concluded that the use of the word "send" rather than the otherwise consistently used "service" " 'must be attributable to careless drafting.' " (*Id.,* at p. 839, quoting 1 Ristau, International Judicial Assistance (Civil and Commercial) § 4-28 at pp. 165-167.) However, whether the phrase "to send" was used because of careless drafting or not, it appears that Japan understood it to mean "to send," not "to serve," as it is implausible that a country which does not use basic postal channels for service of process by its own nationals on their fellows, and which objected to the more rigorous methods of service set out in article 10, subdivisions (b) and (c), would have failed to object to subdivision (a) if it had understood that section to relate to service of process.

*Ackermann* has been cited with approval by a recent opinion from the Central District of California, *Newport Components* v. *NEC Home Electronics* (C.D.Cal. 1987) 671 F.Supp. 1525. We think the following discussion of the *Newport Components* case makes it even more apparent why we have decided not to follow the *Shoei Kako* and *Ackermann* line of cases.

---

[3] It is also worth noting, as a further distinguishing feature of *Ackermann,* that the United States, which was the "receiving" country in *Ackermann,* did not object to *any* subdivision of article 10, whereas Japan, the "receiving" country here, *did* object to subdivisions (b) and (c). This differentiation between the subdivisions by Japan indicates to us, as set out more specifically in this opinion, that Japan did not believe "to send," as that phrase is used in subdivision (a), meant "to serve."

In *Newport Components* v. *NEC Home Electronics* the district court was faced with the same issue raised here. Noting that there was a split among the courts as to the meaning of article 10, subdivision (a), the *Newport Components* court cast its lot with the *Ackermann* line of cases, without any independent discussion of the import of subdivision (a)'s use of the verb "to send," and after finding the following reasoning from *Shoei Kako* particularly persuasive:

" 'If it be assumed that the purpose of the convention is to establish one method to avoid the difficulties and controversy attendant to the use of other methods . . . , it does not necessarily follow that other methods may not be used *if effective proof of delivery can be made*.' " (*Id.,* at p. 1542, quoting *Shoei Kako, supra,* 33 Cal.App.3d at p. 821, italics added by *Newport Components* court.)

We, however, do not find this reasoning persuasive. If the signatories' intent was to establish a *particular* method of service to *avoid* the controversy attendant on the use of *other* methods, and if signatories were allowed, as they were, to *object* to particular modes of service, then it makes no sense to allow private litigants to by-pass the agreed-upon methods and to use other methods, even methods to which some signatories objected, even *if* effective proof of delivery using such alternate and objected-to methods can be made.

Furthermore, the decision in *Newport Components* was additionally based upon that court's belief that resort to the Hague Convention "need not 'be utilized first in every case,' " and that direct mail service is allowable unless the defendant can demonstrate that such service represents an intrusion on Japanese sovereignity. (*Id.,* quoting *In re Societe Nationale Industrielle Aerospatiale* (8th Cir. 1986) 782 F.2d 120, 123-125, and relying on *Societe Nationale Industrielle* v. *U.S. Dist. Court* (9th Cir. 1986) 788 F.2d 1408.) However, the *Newport Components* court's reliance on *Societe Nationale Industrielle* v. *U. S. Dist. Court* and *In re Societe Nationale Industrielle Aerospatiale* is misplaced, as both cases involve the Multilateral Convention on the Taking of Evidence Abroad in Civil and Commercial Matters, March 18, 1970, 23 U.S.T. 2555, T.I.A.S. 7444 (Convention on the Taking of Evidence) (whose text is found in the note following 28 U.S.C. § 1781 (Supp. 1985)), which, while also known as "The Hague Convention," is not the same treaty as the convention here which specifically deals with service of documents, including service of process. As pointed out in *Societe Nationale Industrielle* v. *U.S. Dist. Court, supra,* the reason that resort to the Federal Rules of Civil Procedure may be had in the first instance, rather than to the Convention on the Taking of Evidence, is because federal law "normally governs discovery of documents from foreign parties *subject to the jurisdiction of United States courts even when the documents are located*

*abroad.* [Citation.] *When a district court has jurisdiction over a foreign litigant, the production of documents effectively occurs in the United States and not in the country where the documents are initially located.* [Citation.]" (*Id.,* at pp. 1410-1411, italics added.) "[T]he better rule . . . , is that *when* the district court *has jurisdiction* over a foreign litigant [*then*] the Hague Convention does not apply to the production of evidence. . . ." (*In re Societe Nationale Industrielle Aerospatiale, supra,* 782 F.2d 120, at p. 124, italics added.)

In other words, the cases relied on by the *Newport Components* court merely hold that the *Convention on the Taking of Evidence* is not the only means of obtaining discovery from a foreign defendant *once the district court has obtained jurisdiction over the defendant.* It does not follow from these cases that the methods contained in the *Convention on the Service Abroad of Judicial and Extrajudicial Documents* are *not* the exclusive means of obtaining that initial personal jurisdiction over a foreign defendant via service of process.

In sum, we do not find the *Ackermann* line of cases persuasive, and therefore take the position taken by other commentators and courts that service of process by registered mail is not one of the methods authorized by the Convention for service of process on Japanese defendants. (See, e.g., Routh, *Litigation Between Japanese and American Parties,* in Current Legal Aspects of Doing Business in Japan and East Asia (Hailey ed. 1978) pp. 188, 190-191 ("[s]ome questions have been raised as to whether section 10(a) of the Convention allows service of process by mail. In my opinion it does not. The question of service by mail is not addressed by the Convention; it merely discusses the right to send subsequent judicial documents by mail. Any other process would be a rather illogical result, as the Convention sets up a rather cumbersome and involved procedure for service of process; and if this particular provision allowed one to circumvent the procedure by simply sending something through the mail, the vast bulk of the Convention would be useless. . . ." (fn. omitted); *Reynolds* v. *Koh* (1985) 109 App.Div.2d 97 [490 N.Y.S.2d 295, 297-298]; *Ormandy* v. *Lynn* (1984) 122 Misc.2d 954 [472 N.Y.S.2d 274, 274-275]; *Pochop* v. *Toyota Motor Co., Ltd.* (S.D.Miss. 1986) 111 F.R.D. 464; *Mommsen* v. *The Toro Co.* (S.D.Iowa 1985) 108 F.R.D. 444; *Harris* v. *Browning-Ferris Industries Chem. Serv.* (M.D.La. 1984) 100 F.R.D. 775.) ■ This holding compels the corollary holding, based on the fact that a California court may not exercise jurisdiction in violation of an international treaty (*Dr. Ing H.C. F. Porsche A.G.* v. *Superior Court* (1981) 123 Cal.App.3d 755, 760 [177 Cal.Rptr. 155]), that Suzuki is entitled to have its motion to quash service of process granted.

## Disposition

Let a peremptory writ of mandate issue directing the trial court to vacate its order denying petitioner's motion to quash service of process and to enter a new and different order granting the motion.

Campbell, P. J., and Dabney, J., concurred.

## APPENDIX

**Rule 4**                    RULES OF CIVIL PROCEDURE          104

Subd. (c). Pub.L. 97–462, § 2(2), added subd. (c) and deleted prior provision reading "By Whom Served. Service of process shall be made by a United States marshal, by his deputy, or by some person specially appointed by the court for that purpose, except that a subpoena may be served as provided in Rule 45. Special appointments to serve process shall be made freely. Service of process may also be made by a person authorized to serve process in an action brought in the courts of general jurisdiction of the state in which the district court is held or in which service is made."

Subd. (d). Pub.L. 97–462, § 2(3)(A), substituted the heading "Summons and Complaint: Person to be Served" for "Summons: Personal Service".

Subd. (d)(5). Pub.L. 97–462, § 2(4), substituted "sending a copy of the summons and of the complaint by registered or certified mail" for "delivering a copy of the summons and of the complaint".

Subd. (d)(7). Pub.L. 97–462, § 2(3)(B), struck out par. (7) which read "Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state", the latter provision covered in subd. (c)(2)(C) of this rule.

Subd. (e). Pub.L. 97–462, § 2(5), substituted in the heading "Summons" for "Same".

Subd. (g). Pub.L. 97–462, § 2(6), substituted in second sentence "deputy United States marshal" and "such person" for "his deputy" and "he" and inserted third sentence "If service is made under subdivision (c)(2)(C)(ii) of this rule, return shall be made by the sender's filing with the court the acknowledgment received pursuant to such subdivision.".

Subd. (j). Pub.L. 97–462, § 2(7), added subd. (j).

**Effective Date of 1983 Amendment.** Amendment by Pub.L. 97–462 effective 45 days after Jan. 12, 1983, see section 4 of Pub.L. 97–462, set out as an Effective Date of 1983 Amendment note under section 2071 of this title.

### CONVENTION ON THE SERVICE ABROAD OF JUDICIAL AND EXTRAJUDICIAL DOCUMENTS IN CIVIL OR COMMERCIAL MATTERS

The States signatory to the present Convention,

Desiring to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time,

Desiring to improve the organization of mutual judicial assistance for that purpose by simplifying and expediting the procedure,

Have resolved to conclude a Convention to this effect and have agreed upon the following provisions:

### Article 1

The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad.

This Convention shall not apply where the address of the person to be served with the document is not known..

### CHAPTER I—JUDICIAL DOCUMENTS

### Article 2

Each contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other contracting States and to proceed in conformity with the provisions of articles 3 to 6.

Each State shall organize the Central Authority in conformity with its own law.

### Article 3

The authority or judicial officer competent under the law of the State in which the documents originate shall forward to the Central Authority of the State addressed a request conforming to the model annexed to the present Convention, without any requirement of legalization or other equivalent formality.

The document to be served or a copy thereof shall be annexed to the request. The request and the document shall both be furnished in duplicate.

### Article 4

If the Central Authority considers that the request does not comply with the provisions of the present Convention it shall promptly inform the applicant and specify its objections to the request.

### Article 5

The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either—

(a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or

105    **RULES OF CIVIL PROCEDURE**    **Rule 4**

**(b)** by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed.

Subject to sub-paragraph (b) of the first paragraph of this article, the document may always be served by delivery to an addressee who accepts it voluntarily.

If the document is to be served under the first paragraph above, the Central Authority may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed.

That part of the request, in the form attached to the present Convention, which contains a summary of the document to be served, shall be served with the document.

### Article 6

The Central Authority of the State addressed or any authority which it may have designated for that purpose, shall complete a certificate in the form of the model annexed to the present Convention.

The certificate shall state that the document has been served and shall include the method, the place and the date of service and the person to whom the document was delivered. If the document has not been served, the certificate shall set out the reasons which have prevented service.

The applicant may require that a certificate not completed by a Central Authority or by a judicial authority shall be countersigned by one of these authorities.

The certificate shall be forwarded directly to the applicant.

### Article 7

The standard terms in the model annexed to the present Convention shall in all cases be written either in French or in English. They may also be written in the official language, or in one of the official languages, of the State in which the documents originate.

The corresponding blanks shall be completed either in the language of the State addressed or in French or in English.

### Article 8

Each contracting State shall be free to effect service of judicial documents upon persons abroad, without application of any compulsion, directly through its diplomatic or consular agents.

Any State may declare that it is opposed to such service within its territory, unless the document is to be served upon a national of the State in which the documents originate.

### Article 9

Each contracting State shall be free, in addition. to use consular channels to forward documents, for the purpose of service, to those authorities of another contracting State which are designated by the latter for this purpose.

Each contracting State may, if exceptional circumstances so require, use diplomatic channels for the same purpose.

### Article 10

Provided the State of destination does not object, the present Convention shall not interfere with—

**(a)** the freedom to send judicial documents, by postal channels, directly to persons abroad,

**(b)** the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

**(c)** the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

### Article 11

The present Convention shall not prevent two or more contracting States from agreeing to permit, for the purpose of service of judicial documents, channels of transmission other than those provided for in the preceding articles and, in particular, direct communication between their respective authorities.

### Article 12

The service of judicial documents coming from a contracting State shall not give rise to any payment or reimbursement of taxes or costs for the services rendered by the State addressed.

The applicant shall pay or reimburse the costs occasioned by—

**(a)** the employment of a judicial officer or of a person competent under the law of the State of destination,

**(b)** the use of a particular method of service.

# Rule 4 RULES OF CIVIL PROCEDURE 106

### Article 13

Where a request for service complies with the terms of the present Convention, the State addressed may refuse to comply therewith only if it deems that compliance would infringe its sovereignty or security.

It may not refuse to comply solely on the ground that, under its internal law, it claims exclusive jurisdiction over the subject-matter of the action or that its internal law would not permit the action upon which the application is based.

The Central Authority shall, in case of refusal, promptly inform the applicant and state the reasons for the refusal.

### Article 14

Difficulties which may arise in connection with the transmission of judicial documents for service shall be settled through diplomatic channels.

### Article 15

Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, judgment shall not be given until it is established that—

(a) the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or

(b) the document was actually delivered to the defendant or to his residence by another method provided for by this Convention,

and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend.

Each contracting State shall be free to declare that the judge, notwithstanding the provisions of the first paragraph of this article, may give judgment even if no certificate of service or delivery has been received, if all the following conditions are fulfilled—

(a) the document was transmitted by one of the methods provided for in this Convention,

(b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,

(c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

Notwithstanding the provisions of the preceding paragraphs the judge may order, in case of urgency, any provisional or protective measures.

### Article 16

When a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and a judgment has been entered against a defendant who has not appeared, the judge shall have the power to relieve the defendant from the effects of the expiration of the time for appeal from the judgment if the following conditions are fulfilled—

(a) the defendant, without any fault on his part, did not have knowledge of the document in sufficient time to defend, or knowledge of the judgment in sufficient time to appeal, and

(b) the defendant has disclosed a *prima facie* defense to the action on the merits.

An application for relief may be filed only within a reasonable time after the defendant has knowledge of the judgment.

Each contracting State may declare that the application will not be entertained if it is filed after the expiration of a time to be stated in the declaration, but which shall in no case be less than one year following the date of the judgment.

This article shall not apply to judgments concerning status or capacity of persons.

## CHAPTER II—EXTRAJUDICIAL DOCUMENTS

### Article 17

Extrajudicial documents emanating from authorities and judicial officers of a contracting State may be transmitted for the purpose of service in another contracting State by the methods and under the provisions of the present Convention.

## CHAPTER III—GENERAL CLAUSES

### Article 18

Each contracting State may designate other authorities in addition to the Central Authority and shall determine the extent of their competence.

The applicant shall, however, in all cases, have the right to address a request directly to the Central Authority.

Federal States shall be free to designate more than one Central Authority.

107    **RULES OF CIVIL PROCEDURE**    **Rule 4**

### Article 19

To the extent that the internal law of a contracting State permits methods of transmission, other than those provided for in the preceding articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions.

### Article 20

The present Convention shall not prevent an agreement between any two or more contracting States to dispense with—

(a) the necessity for duplicate copies of transmitted documents as required by the second paragraph of article 3,

(b) the language requirements of the third paragraph of article 5 and article 7,

(c) the provisions of the fourth paragraph of article 5,

(d) the provisions of the second paragraph of article 12.

### Article 21

Each contracting State shall, at the time of the deposit of its instrument of ratification or accession, or at a later date, inform the Ministry of Foreign Affairs of the Netherlands of the following—

(a) the designation of authorities, pursuant to articles 2 and 18,

(b) the designation of the authority competent to complete the certificate pursuant to article 6,

(c) the designation of the authority competent to receive documents transmitted by consular channels, pursuant to article 9.

Each contracting State shall similarly inform the Ministry, where appropriate, of—

(a) opposition to the use of methods of transmission pursuant to articles 8 and 10,

(b) declarations pursuant to the second paragraph of article 15 and the third paragraph of article 16,

(c) all modifications of the above designations, oppositions and declarations.

### Article 22

Where Parties to the present Convention are also Parties to one or both of the Conventions on civil procedure signed at The Hague on 17th July 1905 [99 BFSP 990], and on 1st March 1954 [286 UNTS 265], this Convention shall replace as between them articles 1 to 7 of the earlier Conventions.

### Article 23

The present Convention shall not affect the application of article 23 of the Convention on civil procedure signed at The Hague on 17th July 1905, or of article 24 of the Convention on civil procedure signed at The Hague on 1st March 1954.

These articles shall, however, apply only if methods of communication, identical to those provided for in these Conventions, are used.

### Article 24

Supplementary agreements between parties to the Conventions of 1905 and 1954 shall be considered as equally applicable to the present Convention, unless the Parties have otherwise agreed.

### Article 25

Without prejudice to the provisions of articles 22 and 24, the present Convention shall not derogate from Conventions containing provisions on the matters governed by this Convention to which the contracting States are, or shall become, Parties.

### Article 26

The present Convention shall be open for signature by the States represented at the Tenth Session of the Hague Conference on Private International Law.

It shall be ratified, and the instruments of ratification shall be deposited with the Ministry of Foreign Affairs of the Netherlands.

### Article 27

The present Convention shall enter into force on the sixtieth day after the deposit of the third instrument of ratification referred to in the second paragraph of article 26.

The Convention shall enter into force for each signatory State which ratifies subsequently on the sixtieth day after the deposit of its instrument of ratification.

### Article 28

Any State not represented at the Tenth Session of the Hague Conference on Private International Law may accede to the present Convention after it has entered into force in accordance with the first paragraph of article 27. The instrument of accession shall be deposited with the Ministry of Foreign Affairs of the Netherlands.

The Convention shall enter into force for such a State in the absence of any objection from a State, which has ratified the Convention before such deposit, notified to the Ministry of Foreign Affairs of the Netherlands within a period of six months after the date on which the said Ministry has notified it of such accession.

In the absence of any such objection, the Convention shall enter into force for the acceding State on the first day of the month following the expiration of the last of the periods referred to in the preceding paragraph.

### Article 29

Any State may, at the time of signature, ratification or accession, declare that the present Convention shall extend to all the territories for the international relations of which it is responsible, or to one or more of them. Such a declaration shall take effect on the date of entry into force of the Convention for the State concerned.

At any time thereafter, such extensions shall be notified to the Ministry of Foreign Affairs of the Netherlands.

The Convention shall enter into force for the territories mentioned in such an extension on the sixtieth day after the notification referred to in the preceding paragraph.

### Article 30

The present Convention shall remain in force for five years from the date of its entry into force in accordance with the first paragraph of article 27, even for States which have ratified it or acceded to it subsequently.

If there has been no denunciation, it shall be renewed tacitly every five years.

Any denunciation shall be notified to the Ministry of Foreign Affairs of the Netherlands at least six months before the end of the five year period.

It may be limited to certain of the territories to which the Convention applies.

The denunciation shall have effect only as regards the State which has notified it. The Convention shall remain in force for the other contracting States.

### Article 31

The Ministry of Foreign Affairs of the Netherlands shall give notice to the States referred to in article 26, and to the States which have acceded in accordance with article 28, of the following—

(a) the signatures and ratifications referred to in article 26;

(b) the date of which the present Convention enters into force in accordance with the first paragraph of article 27;

(c) the accessions referred to in article 28 and the dates on which they take effect;

(d) the extensions referred to in article 29 and the dates on which they take effect;

(e) the designations, oppositions and declarations referred to in article 21;

(f) the denunciations referred to in the third paragraph of article 30.

**IN WITNESS WHEREOF** the undersigned, being duly authorised thereto have signed the present Convention.

**DONE** at The Hague, on the 15th day of November, 1965, in the English and French languages, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Government of the Netherlands, and of which a certified copy shall be sent, through the diplomatic channel, to each of the States represented at the Tenth Session of the Hague Conference on Private International Law.

### ANNEX TO THE CONVENTION

Forms

### REQUEST

### FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965.

Identity and address of the applicant        Address of receiving authority

109    **RULES OF CIVIL PROCEDURE**            **Rule 4**

The undersigned applicant has the honour to transmit—in duplicate—the documents listed below and, in conformity with article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.,

(identity and address) .................................................................

...................................................................................

(a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*.

(b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5)*:

.....................................................................................

.....................................................................................

.................................................................................. .

(c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5)*:

The authority is requested to return or to have returned to the applicant a copy of the documents—and of the annexes*—with a certificate as provided on the reverse side.

*List of documents*

.........................................

.........................................

.........................................

.........................................

.........................................

.........................................                  Done at ................, the .............

.........................................

.........................................                  Signature and/or stamp.

* Delete if inappropriate.

*Reverse of the request*

CERTIFICATE

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,

1) that the document has been served *

— the (date) ...............................................................................

— at (place, street, number) ................................................................

— in one of the following methods authorised by article 5—

(a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*.

(b) in accordance with the following particular method *: ..............................

.....................................................................................

(c) by delivery to the addressee, who accepted it voluntarily*.

The documents referred to in the request have been delivered to:

—(identity and description of person) ......................................................

—relationship to the addressee (family, business or other): .................................

.....................................................................................

2) that the document has not been served, by reason of the following facts*:

.....................................................................................

.....................................................................................

.....................................................................................

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement *

*Annexes*

Documents returned: .....................

.........................................

.........................................                  Done at ................, the .............

In appropriate cases, documents estab-
lishing the service: .....................  Signature and/or stamp.

.........................................

.........................................

.........................................

*Delete if inappropriate.

1492

## Rule 4        RULES OF CIVIL PROCEDURE        110

### SUMMARY OF THE DOCUMENT TO BE SERVED

Convention on the service abroad of judicial and extrajudicial documents in civil or Commercial matters, signed at The Hague, the 15th of November 1965
(article 5, fourth paragraph)

Name and address of the requesting authority:.........................................

...............................................

...............................................

Particulars of the parties*:...........................................................

...............................................

...............................................

#### JUDICIAL DOCUMENT **

Nature and purpose of the document:..................................................

...............................................

...............................................

Nature and purpose of the proceedings and, where appropriate the amount in dispute:

...............................................

...............................................

Date and place for entering appearance**:............................................

Court which has given judgment **:  ..................................................

...............................................

Date of judgment **:      ..................................................

Time limits stated in the document **:  ..................................................

...............................................

#### EXTRAJUDICIAL DOCUMENT **

Nature and purpose of the document: ..................................................

...............................................

...............................................

Time limits stated in the document **: ..................................................

...............................................

...............................................

\* If appropriate, identity and address of the person interested in the transmission of the document.

\** Delete if inappropriate.

Entered into force for the United States February 10, 1969, 20 UST 361; TIAS 6638. States which are parties:

Antigua and Barbuda [1]
Barbados [2]
Belgium [3]
Botswana [4]
Czechoslovakia [5]
Denmark [6]
Egypt [7]
Finland [8]
France [9]
Germany, Fed. Rep.[10]
Greece
Israel [11]
Italy [12]
Japan [13]
Luxembourg [14]
Malawi [15]
Netherlands [16]
Norway [17]
Portugal [18]
Seychelles [19]
Sweden [20]
Turkey [21]
United Kingdom [22]
United States [23]

[1] With the following declaration:

By note of May 1, 1958, the government of Antigua and Barbuda has stated that it considers itself as continuing to be bound by the conventions applicable to it prior to its independence.

[2] With the following declaration:

"The Government of Barbados has designated the Registrar of the Supreme Court of Barbados as the Central Authority for the purposes of Articles 2 and 18, in accordance with the provisions of Article 21 of the Convention."

[3] With the following declaration:

"1. In conformity with the first paragraph of Article 2 of the Convention, the Ministry of Justice. Administration de la Législation. Place Poelaert, 4, 1.000 Brussels is designated as the Central Authority;

"2. The Ministry of Justice is also designated as the competent authority to receive documents forwarded by the channels provided for in the first paragraph of Article 9 of the Convention;

"3. The Belgian Government is opposed to use being made within its territory of the freedom to effect service provided for in the first paragraph of Article 8;

"4. The Belgian Government declares that it will avail itself of the provision contained in the second paragraph of Article 15;

"5. In conformity with the third paragraph of Article 16, the Belgian Government declares that the applications mentioned in the second paragraph of Article 16 will not be entertained if they are filed after the expiration of a period of one year following the date of the judgment;

111     RULES OF CIVIL PROCEDURE     **Rule 4**

"**6.** The Belgian Government believes it should draw attention to the fact that any request for the service of documents made under sections a) or b) of the first paragraph of Article 5 requires the agency of a process-server (huissier de justice) and that the resulting costs should be reimbursed in conformity with Article 12 of the Convention."

4 With the following declaration:

"**1.** Pursuant to the first paragraph of Article 2 of the Convention the Minister of State in the Office of the President of the Republic of Botswana has been designated the Central Authority to receive requests for service from other contracting states.

"**2.** The Registrar of the High Court of Botswana is designated as the authority competent to complete the certificate in the form of the Model annexed to the Convention pursuant to the first paragraph of Article 6.

"**3.** In accordance with the provisions of Article 9 of the Convention the Minister of State in the Office of the President is designated as the receiver of process sent through Consular channels.

"**4.** It is declared that the Government of Botswana objects to the method of service referred to in sub-paragraphs (b) and (c) of Article 10.

"**5.** It is declared that a judge of the High Court of Botswana may give judgment if all the conditions specified in paragraph 2 of Article 15 are fulfilled."

All documents forwarded for service must be in duplicate.

5 *Notification in conformity with Article 31, paragraphs c and e, of the Convention*

"The Czechoslovak Socialist Republic deposited its instrument of accession with the Ministry of Foreign Affairs of the Kingdom of the Netherlands on 23 September 1981 in accordance with Article 28, paragraph 1, of the Convention.

"The instrument of accession was accompanied by the following declarations:

"In accordance with Article 8 of the Convention, within the territory of the Socialist Republic of Czechoslovakia judicial documents may not be served directly through the diplomatic or consular agents of another contracting State unless the document is to be served upon a national of the State in which the documents originate;

"In accordance with Article 10 of the Convention, within the territory of the Socialist Republic of Czechoslovakia judicial documents may not be served by another contracting State through postal channels nor through the judicial officers, officials or other competent persons;

"In accordance with Article 15, paragraph 2 of the Convention, Czechoslovakian judges may give judgement even if the conditions pursuant to Article 15, paragraph 1, have not been fulfilled;

"The provisions of Article 29 of the Convention concerning the extension of the Convention to territories for the international relations of which the contracting States are responsible are at variance with the Declaration of the United Nations General Assembly on the Granting of Independence to Colonial Countries and Peoples of 14 December 1960, and for this reason the Socialist Republic of Czechoslovakia does not consider itself to be bound by these provisions."

"A copy of the original text of the declaration is attached.

By Note dated 31 March 1982 and received at the Ministry of Foreign Affairs on 1 April 1982, the Embassy of the Czechoslovak Socialist Republic communicated the following with regard to the above-cited declaration concerning Article 29 of the Convention:

"This declaration cannot be considered a reserve in view of the fact that it does not follow other purposes than a similar declaration made at the ratification of the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, though a different formulation was used.

"By this declaration the Czechoslovak Socialist Republic expresses its disagreement of principle with the status of colonies and other dependent territories which is in contradiction with the Declaration of the United Nations General Assembly on the Granting of Independence to Colonial Countries and Peoples of December 14, 1960.

"The Czechoslovak Socialist Republic, however, has no intention to exclude the application of the Convention on the relations with the territories on which the use of the Convention has been extended in accordance with its Art. 29."

"The States which have ratified the Convention were notified by the Netherlands Government of the accession on 26 October 1981. Since none of these States raised an objection to the accession within the period of six months specified in Article 28, paragraph 2, the said accession became perfect on 9 May 1982.

"The provisions of the Convention will enter into force for the Czechoslovak Socialist Republic on 1 June 1982.

"The Czechoslovak Government has designated the following authorities as the authorities referred to in Articles 2, 6 and 9 of the Convention;

"competent for the Czech Socialist Republic: Ministerstvo spravodlnosti Ceské socialistické republiky/Ministry of Justice of the Czech Socialist Republic 128 10 Praha 2, Vyšehradská 16;

"competent for the Slovak Socialist Republic: Ministerstvo spravodlivosti Slovenskej socialistickej republiky/Ministry of Justice of the Slovak Socialist Republic 883 11 Bratislava, Suvorovova 12.

6 With the following declarations:

*re Art. 2 and 18*

The Ministry of Justice is designated as the Central Authority.

*re Art. 6*

The Danish court of law that has asked for the service to be made is designated as competent to complete the certificate in accordance with Article 6.

*re Art. 9*

The local judge of first instance—though, as regards the court of first instance at Copenhagen and the court of first instance of the city and of the canton of Arhus, the president of the court—is designated as competent to receive documents forwarded through consular channels in accordance with Art. 9.

*re Art. 10*

Denmark is unable to recognize the method of effecting service set out in Art. 10, para. c.

**Rule 4**  RULES OF CIVIL PROCEDURE 112

*re Art. 15*

Denmark avails itself of the power, provided for in Art. 15, second paragraph, to declare that the judge may give judgment in a matter even if the provisions of Art. 15, first paragraph, are not fulfilled.

*re Art. 16*

Denmark avails itself of the power, provided for in Art. 16, third paragraph, to declare that an application will not be entertained if it is made after the expiration of a period of one year following the date of judgment. The question of the re-hearing of a matter in which a person has been judged by default shall be decided in accordance with the rules of the code of procedure, Art. 373 and Art. 374, cf. Art. 434. According to these rules, any person against whom judgment is given by default in an action, in first instance may apply for a re-hearing of the matter if he can prove that the default cannot be imputed to him. The application for a re-hearing should be filed as soon as possible and may not be submitted after the expiration of a period of one year following the date of judgment.

7 With a declaration that the signing of the Agreement "does not mean in any way a recognition of Israel" by the Arab Republic of Egypt and that "no treaty relation" will arise "between" the two countries.

The Arab Republic of Egypt also declared that it "opposes the use of the methods of transmitting abroad the judicial and extrajudicial documents according to Articles 8 and 10 of the Convention."

In conformity with article 21 of the Convention the Arab Republic of Egypt has designated the Ministry of Justice as the central authority as provided for in Articles 2 and 18.

First paragraph of declaration withdrawn effective Jan. 25, 1980.

8 With the following declarations:

"1. The Ministry of Justice has been designated Central Authority, pursuant to the first paragraph of article 2 of the Convention.

"2. The Central Authority (The Ministry of Justice) is acting as the authority presupposed in art. 9 of the Convention.

"3. Finnish authorities are not obliged to assist in serving documents transmitted by using any of the methods referred to in sub-paragraphs (b) and (c) of art. 10 of the Convention."

"(Ministry of Justice was substituted for Ministry of Foreign Affairs as Central Authority by Note dated 31 March 1982, effective 1 June 1982.)

9 With the following declarations:

"1. In conformity with Articles 2 and 18 of the Convention, the Ministry of Justice, Civil Division of International Judicial Assistance (Ministère de la Justice, Service Civil de l'Entraide judiciaire internationale), 13 Place Vendôme, Paris (1 er), is designated as the Central Authority to the exclusion of all other authorities.

"2. The authority competent to complete the certificate referred to in Article 6 is the Public Prosecutor of the Republic (Procureur de la République) in whose district the addressee of the document to be served resides.

"3. The Public Prosecutor of the Republic (Procureur de la République) is likewise authorized to receive documents forwarded through consular channels in accordance with Article 9.

"4. The Government of the French Republic declares that it is opposed, as has been provided for in Article 8, to the direct service, through diplomatic and consular agents of the contracting States, of documents upon persons who are not nationals of those States.

"5. The Government of the French Republic declares that the provisions of the second paragraph of Article 15 have its approval. It furthermore declares, with reference to Article 16, paragraph 3, that an application for relief from the effects of the expiration of the time for appeal from a judgment will not be entertained if it is filed more than twelve months following the date of the judgment."

10 With the following declarations:

"(1) Requests for service shall be addressed to the Central Authority of the Land where the request is to be complied with. The Central Authority pursuant to Article 2 and paragraph 3 of Article 18 of the Convention shall be for

| | |
|---|---|
| Baden-Württemberg | das Justizministerium Baden-Württemberg (The Ministry of Justice of Baden-Württemberg), D 7000 Stuttgart |
| Bavaria | das Bayerische Staats-ministerium der Justiz (The Bavarian State Ministry of Justice), D 8000 München |
| Berlin | der Senator für Justiz (The Senator of Justice), D 1000 Berlin |
| Bremen | der Präsident des Landgerichts Bremen (The President of the Regional Court of Bremen), D 2800 Bremen |
| Hamburg | der Präsident des Amts-gerichts Hamburg (The President of the Local Court of Hamburg), D 2000 Hamburg |
| Hesse | der Hessische Minister der Justiz (The Hessian Minister of Justice), D 6200 Wiesbaden |
| Lower Saxony | der Niedersächsische Minister der Justiz (The Minister of Justice of Lower Saxony), D 3000 Hannover |
| Northrhine-Westphalia | der Justizminister des Landes Nordrhein-Westfalen (The Minister of Justice of the Land Northrhine-Westphalia), D 4000 Düsseldorf |
| Rhineland-Palatinate | das Ministerium der Justiz (The Ministry of Justice), D 6500 Mainz |
| Saarland | der Minister für Rechtspflege (The Minister of Justice), D 6600 Saarbrücken |
| Schleswig-Holstein | der Justizminister des Landes Schleswig-Holstein (The Minister of Justice of the Land Schleswig-Holstein), D 2300 Kiel |

## 113    RULES OF CIVIL PROCEDURE    Rule 4

"The Central Authorities are empowered to have requests for service complied with directly by postal channels if the conditions for service in accordance with paragraph 1(a) of Article 5 of the Convention have been fulfilled. In that case the competent Central Authority will hand over the document to the postal authorities for service. In all other cases the local court (Amtsgericht) in whose district the documents are to be served shall be competent to comply with requests for service. Service shall be effected by the registry of the local court.

"Formal service (paragraph 1 of Article 5 of the Convention) shall be permissible only if the document to be served is written in or translated into, the German language.

"(2) The Central Authority shall complete the certificate (paragraphs 1 and 2 of Article 6 of the Convention) if it has itself arranged for the request for service to be complied with directly by postal channels; in all other cases this shall be done by the registry of the local court.

"(3) The Central Authority of the Land where the documents are to be served and the authorities competent under Section 1 of the Act of 18th December 1958 implementing the Convention on Civil Procedure, signed at The Hague on 1st March 1954, to receive requests from consuls of foreign States, shall be competent to receive requests for service transmitted by a foreign consul within the Federal Republic of Germany (paragraph 1 of Article 9 of the Convention). Under that Act the president of the regional court (Landgericht) in whose district the documents are to be served shall be competent; in his place the president of the local court shall be competent if the request for service is to be complied with in the district of the local court which is subject to his administrative supervision.

"(4) In accordance with paragraph 2(a) of Article 21 of the Convention, the Government of the Federal Republic of Germany objects to the use of methods of transmission pursuant to Articles 8 and 10. Service through diplomatic or consular agents (Article 8 of the Convention) is therefore only permissible if the document is to be served upon a national of the State sending the document. Service pursuant to Article 10 of the Convention shall not be effected."

At the time of the deposit of its instrument of ratification the Federal Republic of Germany declared that the said Convention shall also apply to Land Berlin with effect from the date on which it enters into force for the Federal Republic of Germany.

11 With the following declarations and reservations:

"a) The Central Authority in Israel within the meaning of Articles 2, 6 and 18 of the Convention is: The Director of Courts, Directorate of Courts, Russian Compound, Jerusalem;

"b) The State of Israel, in its quality as State of destination, will, in what concerns Article 10, paragraphs b) and c), of the Convention, effect the service of judicial documents only through the Directorate of Courts, and only where an application for such service emanates from a judicial authority or from the diplomatic or consular representation of a Contracting State;

"c) An application to relieve a defendant from the effects of the expiration of the time of appeal from a judgment within the meaning of Article 16 of the Convention will be entertained only if filed within one year from the date of the judgment in question."

12 Notification in conformity with Article 31, paragraph a and e of the Convention

"In accordance with Article 26, paragraph 2, the Italian Republic deposited its instrument of ratification of the Convention with the Ministry of Foreign Affairs of the Kingdom of the Netherlands on 25 November 1981.

"On the occasion of the deposit of the instrument of ratification the Italian Government notified of the following:

"a) pursuant to Articles 2 and 18, 'l'Ufficio unico degli ufficiali giudiziari presso la corte d'appello di Roma' (the registry of the court of appeal in Rome) is designated as the Central Authority for the purpose of Article 5;

"b) 'gli uffici unici degli ufficiali giudiziari costituiti presso le corti di appello e i tribunali e gli ufficiali giudiziari addetti alle preture' (the registries of the courts of appeal and other courts, and the bailiffs appointed to the courts of first instance) are competent to issue the certificate pursuant to Article 6;

"c) 'gli uffici unici degli ufficiali giudiziari presso le corti di appello e i tribunali e gli ufficiali giudiziari addetti alle preture' (the registries of the courts of appeal and other courts and the bailiffs appointed to the courts of first instance) are competent to receive for the purpose of service, documents forwarded by consular or diplomatic authorities pursuant to Article 9;

"d) the costs proceeding from each request for service in accordance with Article 5, first paragraph, under a and b, which requires the employment of a bailiff, have to be paid in advance in the size of 6.000 lire, except adjustment at the time of restitution of the notified document.

"However, the costs in relation to the notified document pursuant to Article 12, paragraph 2, of the Convention, can be paid after the restitution in a way specifically fixed by the bailiff. The Italian State shall not require any advance or repayment of costs for service of documents requested by the Contracting States in so far as those States for their parts shall not require the payment or repayment of costs for documents originated from Italy.".

"In accordance with Article 27, paragraph 2, the Convention shall enter into force for the Italian Republic on 24 January 1982.

13 With the following declarations and reservations:

"(1) The Minister for Foreign Affairs is designated as the Central Authority which receives requests for service from other contracting States, pursuant to the first paragraph of Article 2.

"(2) The District Court which has rendered judicial aid with respect to the service is designated as the authority competent to complete the certificate in the form of the model annexed to the

Convention, pursuant to the first paragraph of Article 6.

"(3) The Minister for Foreign Affairs is designated as the authority competent to receive documents transmitted through consular channels, pursuant to the first paragraph of Article 9.

"(4) It is declared that the Government of Japan objects to the use of the methods of service referred to·in subparagraphs (b) and (c) of Article 10.

"(5) It is declared that Japanese courts may give judgment if all the conditions specified in the second paragraph of Article 15 are fulfilled."

14 With the following declarations:

"1. The Public Prosecutor at the Superior Court of Justice has been designated as the Central Authority within the meaning of Article 2 of the Convention. He is also competent to receive the documents forwarded through the channels referred to in Article 9, para. 1, of the Convention.

"2. In accordance with Article 8, the Luxembourg Government is opposed to diplomatic and consular agents directly serving within its territory judicial documents on persons other than nationals of their own country.

"3. [Withdrawn by Note dated June 2, 1978.]

"4. When foreign judicial documents are served, in connection with Articles 5(a) and 10(b) and (c), through the intermediary of a Luxembourg official, they must be drawn up in French or German or accompanied by a translation into one of those languages.

"5. The Luxembourg Government declares that notwithstanding the provisions of Article 15, para. 1, of the Convention, its judges can enter judgment if the conditions set out in para. 2 of the said Article are fulfilled.

"6. In accordance with Article 16, para. 3, of the Convention, the Luxembourg Government declares that the applications referred to in para. 2 of the said Article will not be entertained if they are filed after the expiration of a period of one year following the date of the judgment."

15 With a declaration designating the Registrar of the High Court of Malawi, P.O. Box 30244, Chichiri, Blantyre, 3, as the Central Authority referred to in Article 2.

16 With the following declarations:

"1. The Public Prosecutor at the District Court of The Hague is designated for the Netherlands as the Central Authority referred to in Article 2 of the Convention.

"The office of the Public Prosecutor is situated at Juliana van Stolberglaan 2–4, The Hague.

"2. Pursuant to Article 18, paragraph 1, of the Convention, the Public Prosecutor at a District Court other than that of The Hague is likewise competent to receive requests and serve documents in accordance with Articles 3 to 6 of the Convention within the area of jurisdiction of such other Court.

"3. The Public Prosecutor at the District Court in the area of jurisdiction where service of the document has been requested is competent to complete a certificate as referred to under Article 6 of the Convention.

"4. The Public Prosecutor at the District Court in the area of jurisdiction where service of the document is requested has been designated for the Netherlands as the authority referred to in Article 9, paragraph 1, of the Convention which is competent to serve documents forwarded through consular channels.

"5. Notwithstanding the provisions of Article 15, paragraph 1, of the Convention, the Netherlands Court may give judgment, even if no certificate of service or delivery has been received, if all the following conditions are fulfilled:

"a) the document was transmitted by one of the methods provided for in this Convention;

"b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document;

"c) no certificate, either of service or of delivery, has been received even though every reasonable effort has been made to obtain it through the competent authorities.

"6. An application for relief from the effects of the expiration of the time for appeal as provided for in Article 16 is only admissible if it is submitted within a year, to be calculated from the date on which the judgment is given."

In accordance with Article 27, paragraph 2, the Convention shall enter into force for the Kingdom of the Netherlands (for the Kingdom in Europe) on January 2, 1976.

17 With the following declarations:

"1. In accordance with Article 2, the Ministry of Justice, Oslo/Dep, is designated as the Central Authority.

"2. In accordance with Article 6, the County or Town Court in whose district the document has been served is designated for the purpose of completing the certificate in the form annexed to the Convention.

"3. In accordance with Article 9 first paragraph, the County or Town Court in whose district the person to be served is a resident or is staying, is designated as receiver of documents forwarded through consular channels.

"4. The Government of Norway is opposed to the use of such methods of service or transmission of documents on its territory as mentioned in Articles 8 and 10 of the Convention.

"5. Norwegian courts may give judgment when all the conditions specified in the second paragraph of Article 15 are fulfilled.

"6. In accordance with the third paragraph of Article 16, applications for relief according to Article 16 will not be entertained if they are delivered to the competent Norwegian authorities after the expiration of three years following the date of the judgment."

18 *Declaration of Portugal.*—Legal Affairs Department of Ministry of Justice has been designated as Central Authority, in accordance with Art. 2, paragraph 1, of Convention. Justice Department officials: court clerks (escrivães) and process-servers (officiais de diligências) have been designated as persons competent to prepare certificate referred to in Article 6 of Convention. In accordance with Art. 8, paragraph 2, of Convention, the Portuguese government grants diplomatic and consular agents power to serve documents on their

**115    RULES OF CIVIL PROCEDURE    Rule 4**

own nationals only. Portuguese government declares that, notwithstanding provisions of first paragraph of Art. 15 of Convention its judges may give judgment if conditions listed in paragraph 2 of said Art. are fulfilled. In accordance with Art. 16, paragraph 3 of Convention, Portuguese government states that applications referred to in Art. 16, paragraph 2, will not be considered if they are made after expiration of a period of one year from date of judgment.

19 *Notification in conformity with Article 31, paragraph e of the Convention*

By Note dated 4 June 1981 and received at the Ministry of Foreign Affairs of the Kingdom of the Netherlands on 14 July 1981 the Republic of Seychelles informed the Ministry in accordance with Article 21 of the Convention of the following:

*"Article 2*

"The Central Authority designated is:

The Registrar,

Supreme Court,

Victoria,

Mahé,

Republic of Seychelles.

*"Article 8*

"The Government of the Republic of Seychelles declares that it is opposed to service by a contracting state of judicial documents upon persons abroad, without application of any compulsion, directly through the diplomatic or consular agents of that contracting state unless the document is to be served upon a national of the state in which the documents originate.

*"Article 10*

"The Government of the Republic of Seychelles declares that it objects to paragraph (b) and (c) of this Article, in so far as they permit service of judicial documents through officials or persons *other than* judicial officers.

*"Article 15*

"The Government of the Republic of Seychelles declares that notwithstanding the provisions of the first paragraph of this Article, the judge may give judgment even if no certificate of service or delivery has been received, if all the following conditions are fulfilled.

"a) the document was transmitted by one of the methods provided for in this Convention,

"b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,

"c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

*"Article 16*

"The Government of the Republic of Seychelles declares that it will not entertain an application for relief if filed later than one year following the date of the judgment."

20 With the following declarations:

"a) The Ministry for Foreign Affairs (address: Utrikesdepartementet, Juridiska byran, Box 16121, S–103 23 Stockholm 16, Sweden) has been designated Central Authority.

"b) The Central Authority (the Ministry for Foreign Affairs) has been designated to receive documents transmitted through consular channels, pursuant to art. 9.

"c) Swedish authorities are not obliged to assist in serving documents transmitted by using any of the methods referred to in sub-paragraphs (b) and (c) of art. 10.

"By virtue of the third paragraph of art. 5 of the Convention the Central Authority requires that any document to be served under the first paragraph of the same article must be written in or translated into Swedish."

21 With the following declaration:

"1. Pursuant to Article 2, paragraph 1 of the Convention, the Directorate General of Civil Affairs of the Ministry of Justice (Adalet Bakanligi Hukuk Isleri Genel Müdürlügü, Ankara) is designated as the Central Authority.

"2. The Directorate General of Civil Affairs of the Ministry of Justice is also competent to complete certificates as referred to in Article 6 of the Convention.

"3. The Directorate General of Civil Affairs is also designated as the authority competent to receive documents forwarded through the channels specified in Article 9, paragraph 1 of the Convention.

"4. Pursuant to Article 8 of the Convention, the Government of the Republic of Turkey acknowledges the freedom of diplomatic and consular agents to serve judicial documents upon their own nationals only.

"5. The Government of the Republic of Turkey declarés that it is opposed to the use of the methods of serving judicial documents listed in Article 10 of the Convention.

"6. The Government of the Republic of Turkey declares that its judges, notwithstanding the provisions of the first paragraph of Article 15, may give judgment if all the conditions set out in the second paragraph of the said Article are fulfilled.

"7. Pursuant to Article 16, paragraph 3, the Government of the Republic of Turkey declares that applications for relief as referred to in Article 16, paragraph 2, will not be entertained if they are filed after the expiration of a period of one year following the date of the judgment."

22 With the following declarations:

"(1)(a) In accordance with the provisions of Articles 2 and 18 of the Convention, Her Majesty's Principal Secretary of State for Foreign Affairs is designated as the Central Authority; and the Senior Master of the Supreme Court, Royal Courts of Justice, Strand, London, W.C. 2, the Crown Agent for Scotland, Lord Advocate's Department, Crown Office, 9 Parliament Square, Edinburg 1, and the [as per letter dated 10 June 1980] the Master (Queen's Bench and Appeals), Royal Courts of Justice, Belfast 1, are designated as additional authorities for England and Wales, Scotland, and Northern Ireland respectively.

"(b) The authorities competent under Article 6 of the Convention to complete the Certificate of Service are the authorities designated under Articles 2 and 18.

"(c) In accordance with the provisions of Article 9 of the Convention, the United Kingdom

**1498**

designates as receivers of process through consular channels the same authorities as those designated under Articles 2 and 18.

"(d) With reference to the provisions of paragraphs (b) and (c) of Article 10 of the Convention, documents for service through official channels will be accepted in the United Kingdom only by the central or additional authorities and only from judicial consular or diplomatic officers of other Contracting States.

"(e) The United Kingdom declares its acceptance of the provisions of the second paragraph of Article 15 of the Convention.

"(f) In accordance with the provisions of the third paragraph of Article 16 of the Convention, the United Kingdom declares, in relation to Scotland only, that applications for setting aside judgments on the grounds that the defendant did not have knowledge of the proceedings in sufficient time to defend the action will not be entertained if filed more than one year after the date of judgment.

"The authorities designated by the United Kingdom will require all documents forwarded to them for service under the provisions of the Convention to be in duplicate and, pursuant to the third paragraph of Article 5 of the Convention, will require the documents to be written in, or translated into, the English language.

"A notification under the second and third paragraphs of Article 29 regarding the extension of the Convention to the territories for the international relations of which the United Kingdom is responsible will be addressed to the Royal Netherlands Government in due course."

"(2)(a) In accordance with Article 18 of the Convention the Colonial Secretary of Hong Kong is designated as the Authority competent to receive requests for service in accordance with Article 2 of the Convention.

"(b) The authority competent under Article 6 of the Convention to complete the Certificate of Service is the Registrar of the Supreme Court of Hong Kong.

"(c) In accordance with the provisions of Article 9 of the Convention the Registrar of the Supreme Court of Hong Kong is designated as the receiver of process sent through consular channels.

"(d) With reference to the provisions of paragraph (b) and (c) of Article 10 of the Convention, documents sent for service through official channels will be accepted in Hong Kong only by the central or additional authority and only from judicial, consular or diplomatic officers of other Contracting States.

"(e) The acceptance by the United Kingdom of the provisions of the second paragraph of Article 15 of the Convention shall equally apply to Hong Kong.

"The authorities designated above will require all documents forwarded to them for service under the provisions of the Convention to be in duplicate and, pursuant to the third paragraph of Article 5 of the Convention, will require the documents to be written in, or translated into, the English language."

"(3)(a) In accordance with Article 18 of the Convention the authority shown against the name of each territory in the Annex (hereinafter severally called "the designated authority") is designated as the authority in that territory competent to receive requests for service in accordance with Article 2 of the Convention.

"(b) The authority in each territory competent under Article 6 of the Convention to complete the Certificate of Service is the designated authority.

"(c) In accordance with the provisions of Article 9 of the Convention, the designated Authority shall receive process sent through consular channels.

"(d) With reference to the provisions of paragraphs and (b) and (c) of Article 10 of the Convention, documents sent for service through official channels will be accepted in a territory listed in the Annex by the designated authority and only from judicial, consular or diplomatic officers of other Contracting States.

"(e) The acceptance by the United Kingdom of the provisions of the second paragraph of Article 15 of the Convention shall equally apply to the territories named in the Annex.

"The authorities designated in the Annex will require all documents forwarded to them for service under the provisions of the Convention to be in duplicate and, pursuant to the third paragraph of Article 5 of the Convention, will require the documents to be written in, or translated into, the English language."

| | |
|---|---|
| Antigua | The Registrar, High Court of Justice, West Indies Associated States Supreme Court, St. John's, Antigua. |
| Bermuda | The Registrar of the Supreme Court, Bermuda. |
| British Honduras | The Supreme Court Registry, British Honduras. |
| British Solomon Islands Protectorate | The Registrar of the High Court, Honiara, British Solomon Islands Protectorate. |
| British Virgin Islands | The Registrar of the Supreme Court, British Virgin Islands. |
| Cayman Islands | Her Majesty's Principal Secretary of State for Foreign and Commonwealth Affairs, London, S.W. 1. |
| Central and Southern Line Islands | The Registrar of the High Court, Honiara, British Solomon Islands Protectorate. |
| Falkland Islands and Dependencies | The Registrar of the Supreme Court, Stanley, Falkland Islands. |
| Fiji | The Registrar of the Supreme Court, Fiji. |
| Gibraltar | The Registrar of the Supreme Court, Gibraltar. |
| Gilbert and Ellice Islands Colony | The Registrar of the High Court, Tarawa, Gilbert and Ellice Islands Colony. |
| Guernsey | The Bailiff, Bailiff's Office, Royal Court House, Guernsey, Channel Islands. |

117    RULES OF CIVIL PROCEDURE                Rule 4

| | |
|---|---|
| Isle of Man | The First Deemster and Clerk of the Rolls, Rolls Office, Douglas, Isle of Man. |
| Jersey | The Attorney General, Jersey, Channel Islands. |
| Montserrat | The Registrar of the High Court, Montserrat. |
| Pitcairn | The Governor and Commander-in-Chief, Pitcairn. |
| St. Helena and Dependencies | The Supreme Court, St. Helena. |
| St. Lucia | The Registrar of the High Court of Justice, St. Lucia. |
| St. Vincent | The Registrar of the Supreme Court, St. Vincent. |
| Seychelles | The Supreme Court, Seychelles. |
| Turks and Caicos Islands. | The Registrar of the Supreme Court, Turks and Caicos Islands. |

*Extension to Anguilla—*

*Notification in conformity with Article 31, paragraphs d and e, of the Convention*

"In accordance with Article 29, paragraph 2, of the Convention the Ambassador of the United Kingdom of Great Britain and Northern Ireland at The Hague notified the Minister of Foreign Affairs of the Kingdom of the Netherlands, by a Letter dated 30 July 1982 and received on 3 August 1982, the extension of the Convention to Anguilla.

"In accordance with Article 29, paragraph 3, the Convention will enter into force for Anguilla on 28 September 1982.

"The extension was accompanied by the following declarations:

"(a) in accordance with Article 18 of the Convention the Registrar of the Supreme Court of Anguilla (hereinafter called the designated authority) is designated as the authority competent to receive requests for service in accordance with Article 2 of the Convention.

"(b) the authority competent under Article 6 of the Convention to complete the Certificate of Service is the designated authority.

"(c) in accordance with the provisions of Article 9 of the Convention the designated authority shall receive process sent through consular channels.

"(d) with reference to the provisions of paragraphs (b) and (c) of Article 10 of the Convention, documents sent for service through official channels will be accepted by the designated authority and only from judicial, consular or diplomatic officers of other contracting states.

"(e) the acceptance by the United Kingdom of the provisions of the second paragraph of Article 15 of the Convention shall apply to Anguilla.

"The designated authority will require all documents forwarded to it for service under the provisions of the Convention to be in duplicate and, pursuant to the third paragraph of Article 5 of the Convention, will require the documents to be written in, or translated into, the English language.

*"Extension to Saint Christopher and Nevis—*

*Notification in conformity with Article 31, paragraphs d and e, of the Convention*

"In accordance with Article 29, paragraph 2, of the Convention the Ambassador of the United Kingdom of Great Britain and Northern Ireland at The Hague notified the Minister of Foreign Affairs of the Kingdom of the Netherlands by Letter dated 1 March 1983 and received on 2 March 1983 of the extension of the Convention to

the Associated State of Saint Christopher and Nevis.

"In accordance with Article 29, paragraph 3, the Convention will enter into force for Saint Christopher and Nevis on 1 May 1983.

"The Letter contains the following declarations:

"a) in accordance with Article 18 of the Convention the Registrar of the West Indies Associated State Supreme Court, Saint Christopher and Nevis circuit (hereinafter called the designated authority) is designated as the authority competent to receive requests for service in accordance with Article 2 of the Convention;

"b) the authority competent under Article 6 of the Convention to complete the Certificate of Service is the designated authority;

"c) in accordance with the provisions of Article 9 of the Convention the designated authority shall receive process sent through consular channels;

"d) with reference to the provisions of paragraphs (b) and (c) of Article 10 of the Convention, documents sent for service through official channels will be accepted by the designated authority and only from judicial, consular or diplomatic officers of other contracting states;

"e) the acceptance by the United Kingdom of the provisions of the second paragraph of Article 15 of the Convention shall apply to Saint Christopher and Nevis.

"The designated authority will require all documents forwarded to it for service under the provisions of the Convention to be in duplicate and, pursuant to the third paragraph of Article 5 of the Convention, will require the documents to be written in, or translated into, the English language.

23 With the following declarations:

"1.  In accordance with Article 2, the United States Department of Justice is designated as the Central Authority to receive requests for service from other Contracting States and to proceed in conformity with Articles 3 to 6.

"2.  In accordance with Article 6, in addition to the United States Department of Justice, the United States Marshal or Deputy Marshal for the judicial district in which service is made are designated for the purpose of completing the certificate in the form annexed to the Convention.

"3.  In accordance with the second paragraph of Article 15, it is declared that the judge may, notwithstanding the provisions of the first paragraph of Article 15, give judgment even if no certificate of service or delivery has been received, if all the conditions specified in subdivisions (a), (b) and (c) of the second paragraph of Article 15 are fulfilled.

**Rule 4**     RULES OF CIVIL PROCEDURE     118

"**4.** In accordance with the third paragraph of Article 16, it is declared that an application under Article 16 will not be entertained if it is filed (a) after the expiration of the period within which the same may be filed under the procedural regulations of the court in which the judgment has been entered, or (b) after the expiration of one year following the date of the judgment, whichever is later.

"**5.** In accordance with Article 29, it is declared that the Convention shall extend to all the States of the United States, the District of Columbia, Guam, Puerto Rico, and the Virgin Islands."

### Notes and Annotations to the Convention

Litigants wishing to serve a person in one of the Convention countries should request copies in duplicate of the three forms prescribed by the Convention: the "Request", the "Certificate" and the "Summary." These forms may be obtained from the offices of the United States Marshals. Upon completion of these forms, the litigants must then transmit them, together with the documents to be served—all in duplicate—to the local process server.

The local process server thereupon mails all these documents to the "Central Authority" abroad. After service has been effected, one copy of the documents served and an executed "Certificate" all be returned to the local process server, who will transmit these documents to the litigant who initiated the request.

#### —— Annotations

"The Effect of the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters", 2 Cornell Int'l L.J. 125 (1969).

Julen v. Larson, 25 Cal.App.3d 325, 101 Cal. 796 (1972).

Shoei Kako Co., Ltd. v. Superior Court, 33 Cal.App.3d 808, 109 Cal. 402 (1973).

### Cross References

Service on government under this rule in civil action for false claims, see section 3730 of Title 31, Money and Finance.

### Federal Practice and Procedure

Amendment of process and proof of service, see Wright & Miller: Civil § 1479.

Authorization for service beyond state, see Wright & Miller: Civil § 2960.

Commencement of action against nonresident through attachment, garnishment or similar proceedings, see Wright & Miller: Civil § 2931.

Commencement of declaratory judgment action, see Wright, Miller & Kane: Civil 2d § 2768.

Comparison with rule pertaining to subpoena, see Wright & Miller: Civil § 2461.

Condemnation procedure, see Wright & Miller: Civil § 3044 et seq.

Construction with rule relating to commencement of action, see Wright & Miller: Civil § 1053.

Defense against nonstatutory claims in absence of proper service, see Wright & Miller: Civil § 1478.

Discussion of this rule with respect to
Appeals as of right, see Wright, Miller, Cooper & Gressman: Jurisdiction § 3950.
Erie doctrine, see Wright, Miller & Cooper: Jurisdiction § 4504.

Intervention procedure, see Wright & Miller: Civil § 1914 et seq.

Issuance of process only within territorial limits in proceedings for civil contempt, see Wright: Criminal 2d § 53.

Issuance of summons and service on added party, see Wright & Miller: Civil § 1688.

Lien enforcement in certain cases, see Wright, Miller & Cooper: Jurisdiction § 3632 et seq.

Manner of personal service of summons, see Wright: Criminal 2d § 55.

Necessity of
Construing this rule with rule pertaining to harmless error, see Wright & Miller: Civil § 2882.
Following formal procedure for serving process in cases involving rule pertaining to injunctions, see Wright & Miller: Civil § 2952.

Service of process within territorial limits, see Wright, Miller & Cooper: Jurisdiction § 3523.

Personal jurisdiction in shareholder derivative actions, see Wright & Miller: Civil § 1825.

Personal service of summons upon United States and its officers, see Wright & Miller: Civil § 1027.

Presentation of defenses and objections, see Wright & Miller: Civil § 1347 et seq.

Process, see Wright & Miller: Civil § 1061 et seq.

Propriety of dismissal of action for failure to comply with subd. (a) of this rule, see Wright & Miller: Civil § 2369.

Service of process
Civil contempt commitment, see Wright & Miller: Civil § 1145.
Claimants in action under rule pertaining to interpleader, see Wright & Miller: Civil §§ 1703, 1711.
Compulsory joinder cases, see Wright & Miller: Civil § 1610.
Depositions before action, see Wright & Miller: Civil § 2073.
Habeas corpus proceedings, see Wright & Miller: Civil § 1021.
Nonresident aliens for examination and perpetuation of testimony, see Wright & Miller: Civil § 2072.

Service of responsive pleadings, see Wright & Miller: Civil § 1345 et seq.

Service of writ of garnishment by United States marshal, see Wright & Miller: Civil § 2932.

State quasi-in-rem procedures, see Wright & Miller: Civil § 1593.

Substitution of parties, see Wright & Miller: Civil § 1951 et seq.

**119    RULES OF CIVIL PROCEDURE    Rule 4**

Supplemental Rules for Certain Admiralty and
Maritime Claims, see Wright & Miller: Civil
§ 3201 et seq.
Validity of this rule, see Wright, Miller & Coo-
per: Jurisdiction § 4508.

Waiver and preservation of defenses, see Wright
& Miller: Civil § 1390 et seq.

### West's Federal Forms

Affidavit or return of service of summons and
complaint, see § 1244 et seq.
Amendment of process or proof of service, see
§§ 1301, 1302.

Service of summons, see § 1201 et seq.
Service outside state or by publication, see
§ 1216 et seq.

### Practice Commentaries

Amendment of Federal Rule 4 (eff. Feb. 26,
1983) with special statute of limitations precau-
tions.  David D. Siegel.  96 F.R.D. 88.

**Administrative Law and Practice**
Personal jurisdiction, see § 8.51.

### Law Review Commentaries

Jurisdiction and the Japanese defendant.  Rob-
ert W. Peterson (1985) 25 Santa Clara L.Rev. 555.
Litigating the international law of human
rights.  Michael Bazyler (1985) 7 Whittier L.Rev.
713.
Personam jurisdiction—promoters contracts.
(1985) 24 Duquesne L.Rev. 333.

Pseudonymous parties.  Joan Steinman.  (1985)
37 Hastings L.J. 1.

Rule 4: Service by mail may cost you more
than a stamp.  61 Ind.L.J. 217 (1985–1986).

### Library References

Appeal and Error ☞431–433, 808 et seq.
Courts ☞405(14.18).
Criminal Law ☞1082.
Federal Civil Procedure ☞401 et seq.
C.J.S. Appeal and Error §§ 596, 597, 598, 1395
et seq.

C.J.S. Criminal Law § 1714.
C.J.S. Federal Civil Procedure § 186 et seq.
C.J.S. Federal Courts §§ 293(28), 293(29).

### Notes of Decisions

Address for process   31c
Admiralty and maritime claims   61
Amenability to suit   7a
Amendment of pleadings   35a
Attachment   32c
Consent jurisdiction   47b
Costs incurred in obtaining service   66
Defective service   38a
Diversity actions   61a
Diversity and federal question jurisdiction   61b
Duty of Marshal   64
Employer, service on   59
Filing proof of service   65
Foreign countries   43a
Good cause for extension   13c
Incompetents   33a
Laches   55a
Matters to be considered   8a
Moot questions   57a
Motion to quash service
   Generally   50
   Abuse of process   51c
   Depositions   51a
   Extraterritorial service   51d
   Interrogatories   51b
Notice of appearance   60
Pendent jurisdiction   47a
Personal service
   Actual notice   15c
   Attorney   16b
   By certified mail   20a
   By telex   20c
   Federal express, service by   20d

Husband, wife, and child   16a
Immunity upon voluntary appearance   30a
Joint venture   24a
Officer of union   21a
Ordinary mail   20b
Person in charge   22a
Political parties   21b
Trustee of foreign trust   15b
Usual place of business   15a
Police officers   24b
Presence   7b
Remand   39a
Retroactive effect   5a
Sequestration of property   32b
State procedures   62
Substituted service   31a
   Payment of costs   31b
Sufficiency of notice   60a
Summons
   Copy   11a
   Manner of service   13a
   Sufficiency of service   13b
Territorial limits of service
   Bankruptcy court   40b
   100-mile bulge provision   41a
   Prisoners   40a
Third party pleadings   49a
Void judgment   63

### 1. Constitutionality
The adoption of this rule for personal service of
summons, designed to control service of process in